**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Scott E. SMITH, Defendant–Appellant.**

**No. 92–3162.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 8, 1992.

Decided Dec. 11, 1992.

a firearm in relation to a crime of violence violated the due process clause of the Fifth Amendment because the record establishes that the alleged firearm was an antique firearm, (2) whether the district court erred in enhancing defendant's total offense level by two levels under United States Sentencing Guidelines ("U.S.S.G.") § 2B3.1(b)(2)(D)[1] when defendant was also convicted of violating 18 U.S.C. § 924(c), and (3) whether appellant was denied the effective assistance of counsel when his attorney permitted him to plead guilty to the firearm charge and failed to object to the two-level enhancement under U.S.S.G. § 2B3.1(b)(2)(D). For the reasons that follow, we affirm in part, reverse in part, and remand for resentencing.

## I.

### A.

On December 5, 1990, defendant transported his co-defendant, Kevin E. Clark, to Hopewell, Ohio. Kevin Clark, wearing a bandana and brandishing a Navy Arms .44 caliber, black powder six-shot revolver, entered the United States Post Office in Hopewell, Ohio. Clark pointed the revolver at the Postmaster, Blaine Hochstetler, and stated, "This is a stickup. Give me your money. Hurry or you will be dead." The postmaster placed $110.00 and three money orders on the counter. Clark instructed the postmaster to lie down on the floor and stay there or he was a dead man, placed the money orders and cash in a bag, and fled.

Clark was picked up by Smith, who was driving his father's light blue Pontiac sedan, and was driven to Smith's trailer. Smith and Clark were subsequently arrested by Postal Inspectors. During a consent search of the light blue Pontiac sedan, police recovered an unloaded Navy Arms .44 caliber, black powder six-shot revolver, serial number 054666, from under the driver's seat. Defendant then told the Postal Inspectors that his co-defendant had told

Terry Lehmann (argued), Office of U.S. Atty., Cincinnati, OH, Robyn Jones (briefed), Office of U.S. Atty., Columbus, OH, for plaintiff-appellee.

Keith A. Yeazel (argued and briefed), Columbus, OH, for defendant-appellant.

Before: MILBURN and NORRIS, Circuit Judges; and LIVELY, Senior Circuit Judge.

MILBURN, Circuit Judge.

Defendant Scott E. Smith appeals the judgment of conviction and sentence entered following his guilty pleas to charges of assault of a postmaster and robbery of a United States Post Office in violation of 18 U.S.C. §§ 2114 and 2, and carrying a firearm in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c) and 2. On appeal, the issues are (1) whether defendant's guilty plea to the charge of carrying

1. Section 2B3.1(b)(2)(D) has been subsequently redesignated as section 2B3.1(b)(2)(F) of the guidelines.

him that he had robbed the post office, but this was not until they had returned to defendant's trailer.

Subsequently, Kevin Clark was apprehended by the police and was taken to the Muskingum County, Ohio, Sheriff's department where he provided a complete taped confession stating that he and defendant had planned the robbery. Clark admitted to robbing the postmaster at gunpoint and stated that defendant picked him up on Route 40 and took him to defendant's trailer where he received his "cut" of $60 cash. Clark stated that defendant had coached him and provided the clothing and revolver used in the robbery.

Thereafter, defendant was reinterviewed and consented to a search of his trailer. During the search, clothes matching the description of those worn by Clark during the robbery and the three stolen postal money orders were found concealed in a heating duct beneath the trailer floor.

### B.

On January 3, 1991, a Federal Grand Jury for the Southern District of Ohio returned a four-count indictment charging Scott E. Smith and his co-defendant, Kevin E. Clark, with the commission of a post office robbery. Count One of the indictment charged defendant and Clark with conspiracy to commit robbery of a United States Post Office in violation of 18 U.S.C. § 371. Count Two of the indictment charged defendant and Clark with assault of a postmaster with intent to rob and robbing of the United States Post Office in Hopewell, Ohio, on December 5, 1990, in violation of 18 U.S.C. §§ 2114 and 2. Count Three charged defendant and Clark with carrying a firearm during and in relation to the robbery of the post office in violation of 18 U.S.C. §§ 924(c) and 2. Count Four of the indictment charged defendant and Clark with possession of three money orders stolen from the post office in violation of 18 U.S.C. §§ 500 and 2.

Defendant was arraigned on January 9, 1991, and entered pleas of not guilty to all counts of the indictment. Subsequently, on April 15, 1991, pursuant to a written plea

agreement, defendant pled guilty to Counts Two and Three of the indictment. The plea agreement required in pertinent part that in exchange for defendant's guilty pleas to Counts Two and Three of the indictment, the government would agree to the dismissal of Counts One and Four of the indictment and that in exchange for defendant's cooperation, the United States Attorney would make a motion for a downward departure pursuant to 18 U.S.C. § 3500(e) and U.S.S.G. § 5K1.1 at defendant's sentencing hearing.

Thereafter, defendant met with a probation officer, and a presentence investigation report was prepared. The only formal objection which defense counsel made to the presentence investigation report was an objection to the recommendation that defendant be denied a two-level downward adjustment to his total offense level for acceptance of responsibility under U.S.S.G. § 3E1.1.

The presentence investigation report indicated that defendant's base offense level was 20. The presentence investigation report also recommended that the offense level be adjusted upward to 24 due to (1) a two-level upward adjustment pursuant to U.S.S.G. § 2B3.1(b)(1) because the facility involved was a post office, and (2) a two-level upward adjustment under U.S.S.G. § 2B3.1(b)(2)(D) because defendant's co-defendant made an express death threat during the armed robbery.

At sentencing, the district court found that defendant was entitled to the two-level downward adjustment for acceptance of responsibility, which reduced his total offense level to 22. Defendant's total offense level combined with his criminal history category, category IV, produced a sentencing guideline range of 63 to 78 months on the robbery conviction.

The district court sentenced defendant to 70 months incarceration on the assault and robbery conviction and imposed a mandatory, 60-month consecutive sentence on the firearm conviction. Subsequently, the district court accepted the prosecutor's motion for a downward departure based upon sub-

stantial assistance, and reduced the sentence on the robbery conviction to 58 months. This timely appeal followed.

## II.

### A.

Defendant first challenges his guilty plea to the charge of carrying a firearm in relation to a crime of violence under 18 U.S.C. § 924(c). Defendant argues that the weapon used by his co-defendant, Clark, in the post office robbery is not a "firearm" as that term is used in 18 U.S.C. § 924(c). The term "firearm" is defined in 18 U.S.C. § 921(a). As used in that section, the term "firearm" does not include an antique firearm. 18 U.S.C. § 921(a)(3). The term "antique firearm" is defined in 18 U.S.C. § 921(a)(16) which states:

The term "antique firearm" means—

(A) any firearm (including any firearm with a matchlock, flintlock, percussion cap, or similar type of ignition system) manufactured in or before 1898; and

(B) any replica of any firearm described in subparagraph (A) if such replica—

(i) is not designed or redesigned for using rimfire or conventional centerfire fixed ammunition, or

(ii) uses rimfire or conventional centerfire fixed ammunition which is no longer manufactured in the United States and which is not readily available in the ordinary channels of commercial trade.

Defendant asserts that the weapon used by his co-defendant, Clark, in the post office robbery was a replica antique firearm as described in 18 U.S.C. § 921(a)(16)(B)(i) since the weapon is a black powder revolver not using rimfire or conventional centerfire ammunition. Thus, defendant argues that the weapon used by Clark in the post office robbery cannot form the factual basis for an 18 U.S.C. § 924(c) conviction.

The only evidence of record concerning the weapon used by Clark in the post office robbery is that the weapon was a Navy Arms .44 caliber, black powder six-shot revolver, serial number 054666. Moreover, defendant has provided no evidence or basis for his assertion that the weapon is a replica antique firearm as described in 18 U.S.C. § 921(a)(16)(B)(i).

In response to defendant's assertion that the weapon fits the definition of an antique firearm, the government has stated that

[t]he record as it currently exists does not contain sufficient information to determine if in fact the weapon meets the definition of an "antique." The description contained in the record indicates the weapon is discharged by use of powder, but is does not indicate when the weapon was manufactured and/or whether it is a replica of a pre–1898 weapon. The government admits, now that the issue has been raised for the first time, that it is possible the firearm may fit the definition of an antique. However, government counsel is no expert when it comes to firearms and the record which exists in the case does not contain sufficient information to resolve the question.

Appellee's Brief, p. 9. However, the government asserts that because status as an "antique firearm" is an affirmative defense and defendant did not raise the issue at either his change of plea hearing or sentencing hearing, the defendant has waived the defense and relieved the government of the burden of proving the gun was not an antique.

Both the Second and Eleventh Circuits have considered this issue and have determined that the "antique firearms" exception is an affirmative defense which must be raised by a criminal defendant. *See* *United States v. Laroche*, 723 F.2d 1541 (11th Cir.), *cert. denied*, 467 U.S. 1245, 104 S.Ct. 3521, 82 L.Ed.2d 829 (1984); *United States v. Mayo*, 705 F.2d 62 (2d Cir.1983). In *Laroche*, the Eleventh Circuit, citing *Mayo*, stated that it found no indication that Congress intended in all firearms prosecutions that the government prove that the weapons involved were not antiques. *Laroche*, 723 F.2d at 1543 (citing *Mayo*, 705 F.2d at 75).

Believing that the reasoning employed by the Second and Eleventh Circuits is correct, we join our sister circuits in holding that the "antique firearms" exception is an affirmative defense which must

be raised by a criminal defendant. We also hold that where a statutory exception creates an affirmative defense, the ultimate burden of persuasion remains with the prosecution; however, the defendant has the burden of going forward with sufficient evidence to raise the exception as an issue. *Laroche,* 723 F.2d at 1543. Thus, the antique weapons exception must be raised by the defendant before the burden shifts to the government to disprove its applicability. *Id.*

■ Therefore, as defendant in this case did not raise the antique weapons exception as an affirmative defense either at his change of plea hearing or his sentencing hearing, the government was under no obligation to disprove the applicability of the antique firearms exception. Accordingly, defendant's assertion that his guilty plea to the firearms charge under 18 U.S.C. § 924(c) violated due process because the government failed to prove that the weapon did not fall within the antique weapons exception is meritless.

Defendant also claims that his counsel was ineffective for failing to assert the antique firearm exception. This claim will be addressed hereafter.

### B.

■ Defendant's second claim of error is that the district court erred in adding two points to his total offense level pursuant to U.S.S.G. § 2B3.1(b)(2)(D), based on the express threat of death made by his co-defendant, Clark, to the postmaster. In subsequent versions of the sentencing guidelines, U.S.S.G. § 2B3.1(b)(2)(D) has been redesignated as U.S.S.G. § 2B3.1(b)(2)(F). However, the commentary to U.S.S.G. § 2B3.1(b)(2)(D) states:

An "express threat of death," as used in subsection (b)(2)(D), may be in the form of an oral or written statement, act, gesture, or combination thereof. For example, an oral or written demand using words such as "Give me the money or I will kill you", "Give me the money or I will pull the pin on the grenade I have in my pocket", "Give me the money or I will shoot you", "Give me your money or

else (where the defendant draws his hand across his throat in a slashing motion)", or "Give me the money or you are dead" would constitute an express threat of death. The court should consider that the intent of the underlying provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, significantly greater fear than that necessary to constitute an element of the offense of robbery.

U.S.S.G. § 2B3.1, comment. (n. 7).

In his brief on appeal, defendant states that he does not contest the factual findings made by the district court when it adopted the recommendation of the presentence investigation report, nor does defendant contest the fact that his co-defendant made the statements, "This is a stickup. Give me your money. Hurry or you will be dead," to the postmaster. Appellant's Brief, p. 12. Rather, defendant asserts that because a separate, *mandatory sentence* was imposed on the firearm charge under 18 U.S.C. § 924(c), the specific offense characteristic for the possession, use or discharge of a firearm set forth in U.S.S.G. § 2B3.1(b)(2)(D) should not have been applied in view of the commentary in U.S.S.G. § 2K2.4, comment. (n. 2). Section 2K2.4 applies to convictions under 18 U.S.C. § 924(c), and § 2K2.4, comment. (n. 2) states:

Where a sentence under this section is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for the possession, use, or discharge of a firearm (*e.g.,* § 2B3.1(b)(2) (Robbery)), *is not to be applied* in respect to the guideline for the underlying offense.

(Emphasis added).

In the subsequent version of the *Guidelines Manual,* the background to section 2K2.4 states:

18 U.S.C. §§ 924(c) and 929(a) provide *mandatory minimum penalties* for the conduct proscribed. *To avoid double counting,* when a sentence under this section is imposed in conjunction with a

sentence for an underlying offense, any specific offense characteristic for firearm discharge, use, or possession *is not applied* in respect to such underlying offense.

U.S.S.G. § 2K2.4, comment. (backg'd.) (Nov.1991) (emphasis added).[2]

The government responds that the two-level enhancement under U.S.S.G. § 2B3.1(b)(2)(D) was not impermissible double counting under the guidelines because the enhancement was unrelated to Clark's possession, use or discharge of the firearm but was wholly due to his express oral death threat to the postmaster.

The question as to whether the two-level enhancement for an express threat of death should have been applied where defendant was also being given a mandatory sentence under 18 U.S.C. § 924(c) turns primarily on the legal interpretation of the guidelines and thus is reviewed de novo. *United States v. Sanchez,* 928 F.2d 1450, 1458 (6th Cir.1991).

In this case, the enhancement clearly was related to the possession of the firearm. Therefore, we hold that the district court erred in applying the enhancement of U.S.S.G. § 2B3.1(b)(2)(D). As the language of application note two to U.S.S.G. § 2K2.4 makes clear, all four of the specific offense characteristics, parts A through D of U.S.S.G. § 2B3.1(b)(2), are related to the possession and use of firearms. Thus, we conclude that since defendant was sentenced under 18 U.S.C. § 924(c), no enhancement should have been utilized in this case.

In *United States v. Tuck,* 964 F.2d 1079 (11th Cir.1992), the Eleventh Circuit considered the express threat of death enhancement under U.S.S.G. § 2B3.1(b)(2)(D) and concluded that where a bank robber, who did not possess any weapon, told the bank teller that "if she did anything funny he would be back," no express threat of death had been made. In *Tuck,* the court noted that the commentary to the guidelines states that the intent of section 2B3.1(b)(2)(D) is to provide an increased offense level for cases in which the offender engaged in conduct that would instill in a reasonable person, who is a victim of the offense, significantly greater fear than necessary to constitute an element of the offense of robbery.

The words used in this case by defendant's co-defendant during the post office robbery were designed to increase the apprehension of the postmaster, and they were a threat. However, in view of Application Note 2 to the Commentary for U.S.S.G. § 2K2.4, it is clear that the Sentencing Commission viewed an expressed threat of death as the equivalent of possession, use, or discharge of a firearm in the course of a robbery, and intended that the enhancement under § 2B3.1(b)(2)(D) for an express threat of death should not be applied where the defendant is convicted of the violation of 18 U.S.C. § 924(c).

█ If the district court had not improperly applied the two-level enhancement under U.S.S.G. § 2B3.1(b)(2)(D), defendant's total offense level would have been 20, which, when combined with his criminal history category of IV, would result in a sentencing guideline range of 51 to 63 months on the robbery conviction. The district court sentenced defendant to 70 months on the robbery conviction and then departed downward to 58 months, a sentence which is within the applicable sentencing guideline range. However, because the sentence defendant received is longer than the bottom of the range that would have been applied had the district court not erroneously applied the two-level enhancement of § 2B3.1(b)(2)(D), remand for resentencing is required. *See United*

---

**2.** The November 1, 1991, version of the Sentencing Guidelines Manual eliminated any argument that, at least subsequent to that date, the Commission did not intend to refer to expressed threats of death in this Application Note, when the Commission amended the Note to read:

Where a sentence under this section is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for the possession, use, or discharge of a firearm (*e.g.,* § 2B3.1(b)(2)(A)–(F) (Robbery)), is not to be applied in respect to the guideline for the underlying offense.

In the November 1, 1991 version of § 2B3.1(b)(2), subsection (F) is the express threat of death subsection.

*States v. Rosado–Ubiera,* 947 F.2d 644, 646 (2d Cir.1991) (per curiam).

## C.

 Defendant's final claim of error is that he was denied the effective assistance of counsel when his attorney permitted him to plead guilty to the firearm charge, 18 U.S.C. § 924(c), and when his counsel failed to object to the recommendation in the presentence investigation report that his total offense level be enhanced by two levels pursuant to U.S.S.G. § 2B3.1(b)(2)(D) based upon the express death threat made by his co-defendant to the postmaster. To establish ineffective assistance of counsel in a guilty plea context, a defendant must show that counsel's performance was deficient and that there is a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty and would have insisted on going to trial. *See Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); *Thomas v. Foltz,* 818 F.2d 476, 480 (6th Cir.), *cert. denied,* 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987).

 However, in this case, defendant did not assert that his counsel's assistance was ineffective before the district court. Rather, he has raised the issue for the first time before this court on direct appeal. As a general rule, a defendant may not raise a claim of ineffective assistance of counsel for the first time on direct appeal, since such a situation generally precludes an opportunity to develop and include evidence bearing on the merits of the allegations of ineffective assistance in the record. *See United States v. Wunder,* 919 F.2d 34, 37 (6th Cir.1990) (citing *United States v. Hill,* 688 F.2d 18, 21 (6th Cir.), *cert. denied,* 459 U.S. 1074, 103 S.Ct. 498, 74 L.Ed.2d 638 (1982)).

As discussed above, we have already concluded that the district court erred in enhancing defendant's sentence by two levels for an express threat of death pursuant to U.S.S.G. § 2B3.1(b)(2)(D). Since we have concluded that defendant must be resentenced due to the district court's error, his claim that his counsel was ineffective for failing to object at sentencing to such enhancement is moot.

 However, defendant's claim that his counsel was ineffective for failing to assert the antique firearm exception is not moot. There may well be perfectly reasonable strategic considerations on the part of counsel which would explain his failure to assert the antique firearm exception at either the change of plea hearing or sentencing. Given the absence of any record with regard to this issue, which was raised for the first time in this appeal, we will not consider this claimed error.

## III.

For the reasons stated, the district court's judgment is AFFIRMED as to defendant's pleas of guilty but defendant's sentence with regard to assault and robbery of a postmaster under 18 U.S.C. § 2114 is REVERSED and REMANDED for resentencing consistent with this opinion.